ROTH, Circuit Judge, dissenting.
The privacy interests protected by the Fourth Amendment exist on a spectrum. At one end are the petty intrusions we all must endure by virtue of modern life, such as emptying one’s pockets at the airport. At the other are those intrusions that can leave the subject feeling violated. Strip searches, the Supreme Court has held, are among the most intrusive searches the government can undertake.[1]
My colleagues believe that forcing Keat-ing to disrobe and expose his most intimate areas to his parole officer and two police officers was “reasonable under the circumstances,” Were this case before us after a jury trial, where facts had been found and the credibility of witnesses weighed, I might agree. Yet, this matter is before us on summary judgment and the circumstances under which this search occurred are in considerable dispute. As such, I must respectfully dissent in part.[2]
Keating contends that he was ordered upstairs and strip searched almost immediately after he and Coslett entered the Market Street house for the second time. Coslett contends that the search occurred later, after he had ordered Keating to stay downstairs while he and another officer searched the second floor of the house. According to Coslett, it was only after Keating “disobeyed” this instruction that Coslett ordered the strip search. Neither Tokar nor Houssein nor Keating recall Coslett’s instruction. Given the considerable dispute as to whether this instruction was given and the way Coslett relies on Keating’s alleged disobedience to justify his search, I find the record too murky to warrant summary judgment.
Even more troubling, I find all four of the factors the Supreme Court identified in Bell to be used in evaluating the reasonableness of strip searches to militate against a finding of reasonableness here. Notably, the search subjects in Bell were prisoners in state custody, whose privacy expectations were considerably lower than Keating’s.[3] Yet, even for prisoners, the Supreme Court held that strip searches with a visual body cavity inspection, the same search to which Keating was subjected, were not presumptively reasonable and courts must be careful “not to underestimate the degree to which these searches may invade the personal privacy” of those being searched.[4] Thus, taking the facts in the light most favorable to Keating, the first factor, the scope of the particular intrusion, does not favor a finding of reasonableness.
The second element, the manner in which the search was conducted, is equally concerning. Keating contends that he *229 asked Coslett to perform the search in private, with only Keating and Coslett present. Coslett denied the request and, instead, performed the search with the bathroom door open and Houssein and To-kar facing inward, watching. Although Coslett cited safety concerns as justifying this manner of search, noting the sudden disappearance of Lombardo, Coslett did not have similar safety concerns when he brought Keating to the Market Street residence, searched it, and conducted a urinalysis test, all without backup and with Lom-bardo in the house. Moreover, if officer safety were truly at issue, it defies reason to believe that the three officers were safer watching Keating disrobe and lift his genitals than allowing Coslett to search Keating in private while the other two officers faced outwards, watching for Lom-bardo’s return or the emergence of another threat.
The third element, the justification for the search, is the subject of considerable dispute, as noted above. If Keating’s account is credited, the search had virtually no justification at all. As for the fourth element, the place in which the search was conducted, a private home with three law enforcement officers present, is a far cry from the prison lockup in Bell, where the location of the strip search favored a reasonableness finding.
In Bell, the Supreme Court noted that, even in prisons, strip searches can be conducted in “an abusive fashion” and that such “abuse cannot be condoned.”[5] Viewing the totality of the circumstances in the light most favorable to Keating, Coslett’s strip search of Keating could be interpreted as just such an abuse, designed to humiliate Keating. Consequently, I would hold that there are sufficient disputes of material factual issues to send Keating’s Fourth Amendment claim regarding his strip search to a jury. Therefore, as to this claim, I must respectfully dissent.

. Bell v. Wolfish, 441 U.S. 520, 558-59, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

. While I dissent as to the reasonableness of the strip search, I join my colleagues' well-reasoned opinion in all other respects.

. See Bell, 441 U.S. at 559, 99 S.Ct. 1861.

. Bell, 441 U.S. at 560, 99 S.Ct. 1861.

. Id.